No. 24-1123

# United States Court of Appeals
# for the Third Circuit

NRA GROUP, LLC,

*Plaintiff-Appellant,*

v.

NICOLE DURENLEAU AND JAMIE BADACZEWSKI,

*Defendant-Appellees.*

On Appeal from the United States District Court for the Middle District of
Pennsylvania, Civil Case No 1:21-CV-00715,
United States District Judge Jennifer P. Wilson, Presiding

## APPELLANT'S PETITION FOR REHEARING *EN BANC*
## OR IN THE ALTERNATIVE, PANEL REHEARING

OBERMAYER REBMANN
MAXWELL & HIPPEL LLP

Paige Macdonald-Matthes (Pa. I.D. No. 66266)
Ivo J. Becica (Pa. I.D. No. 207013)
Jennifer Bruce (Pa. I.D. No. 329351)
200 Locust Street, Suite 400
Harrisburg, PA 17101
(t) 717-234-9730
PMM@obermayer.com
Ivo.becica@obermayer.com
Jennifer.bruce@obermayer.com

# <u>TABLE OF CONTENTS</u>

P<small>AGE</small> N<small>O(S)</small>

**TABLE OF AUTHORITIES** ................................................................ ii

**INTRODUCTION AND 40(B)(2) STATEMENT**

**INTRODUCTION AND 40(b)(2) STATEMENT** .............................................1

**ARGUMENT** ..........................................................................3

    I.   The Panel Opinion is Inconsistent with the Supreme Court's *Van Buren* Decision and the Decisions of Two Other Circuit Courts ...........3

    II.  The Panel Opinion Relied in an Incorrect Recitation of the Facts and Improperly Flipped the Summary Judgment Burden in Defendants' Favor in Violation of Applicable Third Circuit Precedent ......................7

    III. The Panel Opinion's Errors Implicate Multiple Questions of Exceptional Importance ........................................................12

    IV. The Panel Overlooked Evidence and Case Law Regarding NRA Group's Trade Secrets Claims ...............................................14

    V.  The Panel Overlooked Circumstantial Evidence Regarding Durenleau's Intent To Defraud ...............................................15

**CONCLUSION** ......................................................................16

**COMBINED CERTIFICATE OF COMPLIANCE** ..........................................18

**STATEMENT OF COUNSEL PURSUANT TO 3D Cir. L.A.R. 35.0** .............19

**CERTIFICATE OF SERVICE** ......................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page No(s)**

**Cases**

*A.M. Skier Agency, Inc. v. Gold*,
  747 A.2d 936 (Pa. Super. 2000) ........................................................... 15

*Artway v. Atty. Gen. of New Jersey*,
  83 F.3d 594 (3d Cir. 1996) ............................................................... 2, 19

*Canada v. Samuel Grossi & Sons Inc.*,
  49 F.4th 340 (3d Cir. 2022) ................................................................ 2, 8

*Crown Coal & Coke Co. v. Compass Point Resources*,
  2009 WL 891869 (W.D. Pa. 2009) ...................................................... 15

*East Coast Paving & Sealingcoating, Inc. v. Emery*,
  32 Pa. D&C 5th 313, 2013 WL 10545382 ........................................... 15

*Lexpath Techs. Holdings, Inc.v. Welch*,
  744 Fed. Appx. 74 (3d Cir. 2018) ........................................................ 2, 9

*Teva Pharmaceuticals USA, Inc. v. Sandhu*,
  291 F.Supp.3d 659 (E.D. Pa. 2018) ..................................................... 12

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012) ......................................................... 2, 6, 7

*United States v. Willis*,
  476 F.3d 1121 (10th Cir. 2007) ........................................................... 15

*Van Buren v. United States*,
  593 U.S. 374 (2021) ................................................... 3, 2, 3, 4, 5, 19

*WEC Carolina Energy Solutions LLC v. Miller*,
  687 F.3d 199 (4th Cir. 2012) ............................................................... 2, 7

**Rules**

Fed. R. App. P. 32.1 ............................................................................... 2

Fed. R. App. P. 40 ................................................................... 1, 7, 8, 18

Fed. R. Civ. P. 56 ................................................................................... 1

## <u>INTRODUCTION AND 40(b)(2) STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 40(b)(2), Plaintiff/Appellant NRA Group, LLC ("Appellant" or "NRA Group") respectfully requests reconsideration *en banc* of the panel's August 26, 2025, decision. In the alternative, Appellant respectfully requests panel rehearing pursuant to Rule 40(b)(1).

An *en banc* rehearing following a panel decision is appropriate when one or more of the below factors are satisfied:

> (A) the panel decision conflicts with a decision of the court to which the petition is addressed (with citation to the conflicting case or cases) and the full court's consideration is therefore necessary to secure or maintain uniformity of the court's decisions;
>
> (B) the panel decision conflicts with a decision of the United States Supreme Court (with citation to the conflicting case or cases);
>
> (C) the panel decision conflicts with an authoritative decision of another United States court of appeals (with citation to the conflicting case or cases); or
>
> (D) the proceeding involves one or more questions of exceptional importance, each concisely stated.

Fed.R.App.P. 40(b)(2).

The panel's ruling, affirming Summary Judgment on all of NRA Group's affirmative claims, is ripe for *en banc* rehearing pursuant to all four (4) of the above subparts.

Regarding subpart (A), the Panel Opinion conflicts with the standard to be applied on a Motion for Summary Judgment under Fed. R. Civ. P. 56, as set forth by

this Court in *Canada v. Samuel Grossi & Sons Inc.*, 49 F.4th 340 (3d Cir. 2022), as interpreted in the context of the Computer Fraud and Abuse Act ("CFAA") in *Lexpath Techs. Holdings, Inc.v. Welch*, 744 Fed. Appx. 74 (3d Cir. 2018).[1]

Regarding subpart (B), the Panel Opinion conflicts with the "gates-up-or-down" approach adopted by the Supreme Court in *Van Buren v. United States*, 593 U.S. 374 (2021).

Regarding subpart (C), the Panel Opinion conflicts with *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012) and *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012).

Regarding subpart (D), the "exceptional importance" requirement has been described in terms of the importance to the parties to the suit and to similarly situated parties. *Artway v. Atty. Gen. of New Jersey*, 83 F.3d 594, 597 (3d Cir. 1996) (Alito, J., dissenting from denial of rehearing). The questions of exceptional importance here, for both NRA and other organizations seeking to protect their systems and data, are summarized follows:

- Short of outright termination of employment, is there any way for employers to limit the scope of their employees' authorization to access their computer systems?

- Relatedly, can employers place limitations on which employees can authorize other employees to access certain areas of company computer systems? Are employers with password-sharing prohibitions without recourse under the CFAA if employees violate those access restrictions?

---

[1] Pursuant to Fed. R. App. P. 32.1, a copy of this unpublished decision is attached to this Petition.

- If an employer has established physical or code-based limitations that prevent an employee from accessing from certain locations or during certain times, can an employee circumvent those limitations by enlisting the help of another employee?

- If client lists containing passwords are misappropriated, is their owner without recourse under the DTSA?

## ARGUMENT

### I.  The Panel Opinion is Inconsistent with the Supreme Court's *Van Buren* Decision and the Decisions of Two Other Circuit Courts

In affirming the summary judgment order dismissing all of Appellant's affirmative claims, the Panel Opinion relied in large part on the Supreme Court's decision in *Van Buren v. United States*, 593 U.S. 374 (2021). Notably, the Panel Opinion states that *Van Buren* "compels affirming the District Court's ruling that the employees did not exceed authorized access." (Panel Op. at pg. 17) (emphasis added). However, the Panel Opinion ignored the significant differences between the facts before the Court in *Van Buren*, and the facts in this case.[2] Furthermore, the Panel Opinion improperly considered the purpose of the Defendants' unauthorized access, which is irrelevant to the "gates up/gates down" formulation set forth in *Van Buren*. As such, *Van Buren* does not compel affirmance in this case, but in fact supports reversal and remand to resolve multiple material disputes of fact.

---

[2] Unlike the Defendants here, the defendant in *Van Buren* had access to his employer's computer system, via his patrol car computer, using his own username and password, at the time of the access in question. 593 U.S. at 380.

A critical element of the *Van Buren* standard is the irrelevance of the <u>purpose</u> of the computer access when determining liability under the CFAA. Focusing on the statutory text defining the phrase "exceeds authorized access," the majority concluded that the phrase "'is not entitled so to obtain' is best read to refer to information that a person is not entitled to obtain by using a computer that he is authorized to access." 593 U.S. at 384. The majority went on to observe that "[i]t is thus consistent with that meaning to equate 'exceed[ing] authorized access' with the act of entering a part of the system to which a computer user lacks access privileges." <u>Id.</u> at 388. The majority agreed with the defendant's assertion that the "exceeds authorized access" clause targets "those who access a computer with permission, but then 'exceed' the parameters of authorized access by entering an area of the computer to which [that] authorization does not extend." <u>Id.</u> at 389-390. The majority then rejected the government's argument that an employee's improper <u>purpose</u> in utilizing their authorized access does not render that access unauthorized, reasoning that doing so would criminalize activities such as sending a personal e-mail. <u>Id.</u> at 394. The Court reasoned that considering purpose would "inject arbitrariness" into the assessment of CFAA liability. <u>Id.</u> at 395.

Viewing the facts in the light most favorable to NRA, *Van Buren* compels a finding that, at the very least, Defendant Badaczewski exceeded her authorization when she twice logged in to NRA Group's systems using Defendant Durenleau's password. (JA-2899-2999 at ¶¶103-106 (January 6, 2021); JA-2903-2904 at ¶¶133-139 (January 7, 2021)). In so doing, Badaczewski knowingly (and admittedly) accessed a folder within

NRA Group's computer system (containing a password spreadsheet) that fell outside the areas that she was given authorization to access via her own username and password. (JA-2899 at ¶105; JA-2903-2904 at ¶¶138-139). When interviewed by police a few months after the unauthorized access, Badaczewski admitted that the only way she could access the spreadsheet was to log in under Durenleau's credentials because Durenleau's desktop "had things that [Badaczewski's] didn't." (JA-2904 at ¶140). Badaczewski also admitted that she knew that Defendants were prohibited from sharing their computer passwords with anyone (JA-2902 at ¶127) and that signing in as another employee was a "huge violation." (JA-3010 at ¶919).

Badaczewski's actions are a clear-cut example of exceeding authorized access under *Van Buren*. The conclusion that using another employee's password equates to exceeding authorized access is further supported by the Court's observation in *Van Buren* that Congress added a password-trafficking provision at the same time it defined "exceeds authorized access." 593 U.S. at 390, n.9.

The Panel Opinion attempts to sidestep Badaczewski's exceedance of her access by citing to her purportedly valid work purpose for her access. Even if Defendants could establish a valid work purpose as an undisputed fact (which they cannot), neither the CFAA nor *Van Buren* allows a court to consider a user's purpose when determining whether the computer access "gates" were up or down at a given point in time. Contrary to *Van Buren*, the Panel Opinion's analysis introduces purpose-based arbitrariness into the determination of CFAA liability.

This case presents a unique fact pattern that was not addressed by the Supreme Court in *Van Buren*: the situation where an employer has taken extensive steps, both through computer use policies, structural (code-based) access limitations, and physical limitations, to prevent employees from (1) using password sharing to access areas of the computer that would otherwise be off-limits to them; or (2) accessing its computer systems when away from the office, unless the employee was specifically issued a laptop with VPN capabilities that could access NRA Group's systems through its firewall. (JA-2886-2894 at ¶¶5-58). Unlike the purpose-based restrictions in *Van Buren*, the restrictions that NRA Group is relying on here prohibit access <u>regardless</u> of intent or purpose. To paraphrase *Van Buren*, the gates were <u>always</u> closed to employees accessing areas otherwise off-limits to them via unauthorized password sharing, and the gates were <u>always</u> closed to employees when they were away from the office without a VPN-enabled laptop. This case is, in essence, the flip side of *Van Buren*: instead of the prosecutor/plaintiff asserting that the defendant accessed a system for an improper purpose, the defendants here are attempting to argue that their allegedly innocent intent should excuse their otherwise unauthorized access.

The Fourth and Ninth Circuits have touched upon the type of conduct that Defendants engaged in and concluded that it would violate the CFAA. First, in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012), the Ninth Circuit, *en banc*, interpreted the CFAA's "exceeds authorized access" prong to apply to "individuals whose initial access to a computer is authorized but who access unauthorized information or files." <u>Id.</u> at

858. The Ninth Circuit also noted that if an employee "is given full access to the information, provided he logs in with his username and password" but instead uses another employee's login to copy information from the database, he "does so in a manner he was not authorized 'to so obtain.'" Id. This is exactly what Defendant Badaczewski did here.

Next, in *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012) the Fourth Circuit, citing *Nosal*, made an observation that is directly on point here: "if an employee has complete access to information with his own username and password, but accesses information using another employee's username and password, he also obtains information 'in a manner' that is not authorized." *Id.* at 205.

When looking at the text of the CFAA and the "gates up/down" formula established in *Van Buren*, there is no legally recognizable excuse for Defendants' unauthorized access. As detailed below, the Panel Opinion compounded this error by relying on a selective and incorrect reading of the facts, and by improperly construing the facts in the light most favorable to the parties moving for summary judgment.

## II.    The Panel Opinion Relied in an Incorrect Recitation of the Facts and Improperly Flipped the Summary Judgment Burden in Defendants' Favor in Violation of Applicable Third Circuit Precedent

In addition to improperly applying the *Van Buren*, *Nosal*, and *WEC Carolina* decisions, the Panel Opinion overlooked or misapprehended multiple points of law or fact and failed to apply the proper standard on *de novo* review of the District Court's grant of Defendants' Motion for Summary Judgment. Rule 40 also provides for panel

rehearing, when the panel has "overlooked or misapprehended" a point or points of law or fact. Fed. R. App. P. 40(b)(1). Accordingly, in the alternative to *en banc* rehearing, Appellant respectfully requests a panel rehearing pursuant to Rule 40(b)(1).

In discussing the standard of review that the District Court was bound to apply in evaluating Defendants' Motion for Summary Judgment, the Panel Opinion cited this Court's decision in *Canada v. Samuel Grossi & Sons Inc.*, 49 F.4th 340 (3d Cir. 2022) and acknowledged that the proper inquiry to be applied by the District Court was "whether, viewing the facts in the light most favorable to NRA and drawing all inferences in its favor, [Defendants] are entitled to judgment as a matter of law because there are no genuine disputes of material fact." Panel Op. at pg. 15. However, the Panel Opinion did not properly apply this summary judgment standard in its analysis, and instead granted all favorable inferences to the moving parties (Defendants) in finding that they did not violate the CFAA. In doing so, the Panel Opinion improperly flipped the summary judgment burden.

In *Canada v. Grossi*, the Third Circuit reversed the District Court's grant of summary judgment due to a dispute of fact regarding the reasons for the employee's termination, reasoning that there was a "convincing mosaic" of circumstance evidence, which "taken as a whole and viewed in a light most favorable to [plaintiff's] case, could convince a reasonable jury that he was the victim of unlawful retaliation." *Id.* at 349. Similarly, the Third Circuit has previously ruled that, where there is a factual dispute regarding whether the defendant in a CFAA claim had permission to access a computer

8

system, summary judgment is inappropriate. See *Lexpath Techs. Holdings, Inc. v. Welch*, 744 Fed. Appx. 74, 82 (3d Cir. 2018) ("the District Court determined that whether [defendant] had permission to access and clean the laptop was ultimately an issue of fact for the jury . . . . Given that there are genuine disputes of material fact as to whether [defendant's] use was authorized, the District Court properly denied [plaintiff's] motion for summary judgment").

Here, when properly applying the above standard, there is at the very least a material dispute of fact regarding whether the Defendants were authorized to access NRA Group's computer system (and/or exceeded their authorized access) on the two dates in question: January 6th and 7th, 2021. On the first day, Defendant Durenleau was out of the office and her supervisor Lisa Daube had asked Durenleau to share her password to a third-party online portal (NMLS) so that Daube could resolve a licensing issue using that platform. JA-2894-2896 at ¶¶59-75. Daube offered to have IT locate the missing NMLS password if Durenleau could not. JA-2898 at ¶94. At this time, Durenleau knew that she had no way of accessing NRA Group's computer systems, since she had been denied access to NRA Group's office and had been denied a VPN-enabled computer to allow her remote access. JA-2892-2894 at ¶¶43-58. Durenleau was also aware that NRA Group's policies strictly prohibit password sharing. JA-2887-2891 at ¶¶13-37, JA-2902 at ¶125. But Durenleau ignored her supervisor's offer to locate the NMLS password through legitimate means, and instead took it upon herself to enlist Badaczewski (a colleague in a different department and office location, who she did not

supervise) to log in as Durenleau and thus access an area of the computer that Badaczewski did not have access to. JA-2898-2900 at ¶¶95-106.

On the second day, a day after the NMLS password had already been provided and the licensing issue in question had been resolved (JA-2900-2902 at ¶¶107-123), Durenleau asked Badaczewski to log in using Durenleau's password a second time—this time not to address any work-related request or task, but to e-mail Durenleau a copy of the password spreadsheet (JA-2903-2904 at ¶¶133-139). Badaczewski, who also admitted that she knew that Defendants were prohibited from sharing their computer passwords with anyone (JA-2902 at ¶127), testified that Durenleau wanted her to e-mail the spreadsheet because Durenleau "didn't trust IT or, like, anyone else getting her passwords." JA-2902 at ¶130.

Viewing the facts in the light most favorable to NRA Group, both instances of access were completely unauthorized and unnecessary. Tellingly, neither Defendant was able to identify any instruction or permission granted by any supervisor or manager of NRA Group allowing them to share passwords or to have Badaczewski log in as Durenleau. JA-2901 at ¶¶118-121; JA-2902 at ¶¶124, 126; JA-2906 at ¶158. Neither Defendant was a Security Officer with authority to authorize exceptions from NRA's Security Manual. JA-2887-2889 at ¶¶13-23.

Despite myriad evidence that could allow a reasonable jury to conclude that Defendants' access was unauthorized, the Panel Opinion effectively flipped the summary judgment burden, and concluded, as a matter of law, that the proverbial

"gates" were up/open for both Defendants. In doing so, the Panel Opinion relied on an incorrect timeline of events, citing to an e-mail from NRA Group's CEO, Steve Kusic, before moving on to discuss Badaczewski's first system access using Durenleau's password shortly after noon on 1/6/21. (Panel Op. pp. 6-7). However, the e-mail in question was sent <u>after</u> this first instance of unauthorized access (and in any event, the e-mail did <u>not</u> instruct Durenleau to share her NRA password or log into any NRA systems, and was focused on a task to be completed using NMLS). (JA-2901 at ¶¶115-121). Compounding this error, the Panel Opinion cited to this after-the-fact e-mail again in its legal analysis of the "exceeds authorized access" prong of the CFAA (Panel Op. pg. 22) and did not perform a separate analysis regarding whether Mr. Kusic (or anyone else at NRA) had authorized Badaczewski to log on as Durenleau on 1/7/21.

The Panel Opinion overlooked additional evidence on the record that creates a material issue of fact in footnote 7, which discusses whether Badaczewski had the requisite intent to exceed her authorized access. Panel Op. at pg. 22 n.7. Badaczewski's own admissions (outlined on page 5 of this Petition) would allow a reasonable factfinder to conclude that she intended to exceed the access that she had been granted through her own credentials.

The Panel Opinion's incorrect conclusion that there was no material dispute of fact regarding Badaczewski's access sidestepped another important issue: whether Durenleau's inducement of Badaczewski to exceed her access compels a finding of liability against Durenleau as well. Well-reasoned district court precedent suggests that

the answer to this question is "yes." See *Teva Pharmaceuticals USA, Inc. v. Sandhu*, 291 F.Supp.3d 659, 659 (E.D. Pa. 2018) ("a person who did not directly access the computer may still be liable under the CFAA if he 'directs, encourages, or induces' someone else to access a computer that he himself is unauthorized to access.").

Furthermore, the Panel Opinion's ultimate holding (Panel Op. at pg 23) ignores evidence that would allow a reasonable jury to conclude that Defendants' conduct was restricted by more than just computer use policies: namely, the firewall and VPN restrictions barring Durenleau's remote access to the system (JA-2886-2887 at ¶¶5-11), NRA Group's decision not to provide Durenleau with a laptop and to bar her from coming into the office during her leave of absence (JA-2892-2894 at ¶¶43-58), and the fact that NRA Group gave Badaczewski a password specific to her that only allowed her to access certain areas of the system as a marketing employee. If Defendants' actions were barred by policy alone, they could have accessed the system themselves using their own credentials.

## III.   The Panel Opinion's Errors Implicate Multiple Questions of Exceptional Importance

The Panel Opinion contained an exceedingly broad holding, unsupported by the text of the CFAA and prior precedent, to wit: "absent evidence of code-based hacking, the CFAA does not countenance claims premised on a breach of workplace computer-use policies by current employees." (Panel Op. at pg. 23). This broad holding has

significant consequences for both NRA Group and other organizations who are justifiably concerned about protecting their computer systems.

In the modern workplace, employees who typically already have some level of access to company systems can significantly undermine data security without engaging in traditional code-based "hacking." The Panel Opinion's holding essentially means that the only way for employers to limit the scope of their employees' authorization is to terminate their employment outright. For instance, if an employee is suspected of misconduct and placed on a suspension pending further investigation, under this holding the employee would still be deemed authorized to access the employer's computer system, and the CFAA would provide no remedy.

Furthermore, the Panel Opinion did not directly address whether employers can place limitations on which employees can authorize other employees to access certain areas of company computer systems. However, its broad holding undermines any such limitations, effectively rendering password-sharing prohibitions toothless and allowing managers (such as Durenleau here) to direct lower-level employees to exceed their more limited access privileges. Under this holding, access would be deemed authorized even if the company enacts a strict prohibition on password sharing that does not allow individual managers to make exceptions. This has far-reaching consequences in an age where traditional code-based hacking has given way to social engineering methods such as "phishing" to trick individuals to disclose information such as passwords. For instance, "spear phishing" relies on the attacker's ability to personalize a message to

their target—a potentially lucrative tactic in the hands of an employee who may already know the contacts or interests of higher-level managers with more extensive system access.[3]

Finally, while the Panel Opinion purports to limit its holding to claims premised on computer use policies, the panel essentially sanctioned Defendant Durenleau's "end run" around physical and code-based barriers to her access during the time period in question (lack of office access combined with lack of VPN laptop access). Under this holding, firewalls can be easily circumvented by employees on the outside if there is at least one employee on the "inside" who can access what was otherwise inaccessible. This is a new and significant exception to a code-based access restriction.

## IV. The Panel Overlooked Evidence And Case Law Regarding NRA Group's Trade Secrets Claims

In affirming the dismissal of Appellant's trade secrets claims, the Panel Opinion misconstrued the evidence, relied on distinguishable caselaw, and failed to consider applicable precedent. First, the panel incorrectly concluded that the spreadsheet at issue used pseudonyms for NRA Group's customers. (Panel Op. at pg. 26, n.10). In fact, it was NRA Group's <u>counsel</u> that utilized pseudonyms in its submissions to protect the full customer names contained in the spreadsheet. (JA-2920 to JA-2927). Furthermore, the Panel Opinion did not consider the multiple cases supporting NRA's position that

---

[3] See
https://www.dni.gov/files/NCSC/documents/campaign/Counterintelligence_Tips_Spearphishing.pdf

customer lists are trade secrets. See *East Coast Paving & Sealingcoating, Inc. v. Emery*, 32 Pa. D&C 5th 313, 2013 WL 10545382 (C.C.P Lawrence 2013); *A.M. Skier Agency, Inc. v. Gold*, 747 A.2d 936 (Pa. Super. 2000); *Crown Coal & Coke Co. v. Compass Point Resources*, 2009 WL 891869 (W.D. Pa. 2009). The panel relied upon the *State Analysis* case, but did not address the fact that *State Analysis* involved only passwords for the plaintiff's own system, as opposed to the multiple third-party systems. Finally, the panel did not address *United States v. Willis*, 476 F.3d 1121 (10th Cir. 2007), which addresses the economic value of credentials for the types of large non-public databases at issue here.

## V. The Panel Overlooked Circumstantial Evidence Regarding Durenleau's Intent to Defraud

In affirming the dismissal of Appellant's state law fraud claim against Defendant Durenleau, the Panel Opinion overlooked multiple pieces of circumstantial evidence creating a material dispute of fact regarding Durenleau's intent to deceive NRA when she transferred accounts into her workgroup to receive bonuses. The Panel Opinion suggests that NRA Group's only evidence in support of this claim was the fact that Durenleau asked "did I do something wrong" during an audit of her account activity. Panel Op. at pg. 33. However, NRA Group also presented other circumstantial evidence in support of this claim, including the fact that the audit in question revealed that some of the accounts had been moved <u>after</u> payment had been received (which means that no further work needed to be done on those accounts). (JA-2940-941 ¶¶ 376-383). Durenleau testified that in order to receive a bonus, "[y]ou had to actually do

the work, period." (JA-3056 at 116:1-5). She also testified that another employee showed her how to move accounts into her workgroup after payment had already been made, stating "This is how you steal them back." (JA-2938 ¶¶ 354-355).

## CONCLUSION

The Panel Opinion in this matter directly conflicts with decisions of both the United States Supreme Court and other federal circuits. These conflicts are a matter of extreme importance to not only the parties, but other organizations similarly situated to NRA Group, who seek to rely on the CFAA to protect their computer systems from both external but also internal threats. Further, the Panel Opinion overlooked critical facts creating multiple material disputes of fact that compel the denial of summary judgment, and effectively flipped the summary judgment burden.

Accordingly, Appellant NRA Group asks that this Honorable Court grant its Petition for Rehearing *En Banc* or in the alternative grant its Petition for Panel Rehearing so these errors may be corrected.

Respectfully Submitted,

OBERMAYER REBMANN
MAXWELL & HIPPEL LLP

*Paige Macdonald-Matthes, Esquire*
Paige Macdonald-Matthes (Pa. I.D. No. 66266)
Ivo J. Becica (Pa. I.D. No. 207013)
Jennifer Bruce (Pa. I.D. No. 329351)
200 Locust Street, Suite 400
Harrisburg, PA 17101
(t) 717-234-9730

16

PMM@obermayer.com
Ivo.becica@obermayer.com
Jennifer.bruce@obermayer.com

Dated: September 8, 2025

## <u>COMBINED CERTIFICATE OF COMPLIANCE</u>

I, Paige Macdonald-Matthes, certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

I certify that this petition complies with the type-volume limitation of Rule 40(d)(3)(A) because it was produced using a computer and, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains fewer than 3,900 words.

I certify that this Petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of 32(a)(6) because this Brief has been prepared in a proportionally-spaced typeface using the Office 365 version of Microsoft Word in 14-point Garamond font.

I certify that this Brief complies with the electronic filing requirements of Third Circuit Local Rule 31.1(c) because the text of this electronic Brief is identical to the text of the paper copies, and a virus detection program, CrowdStrike, has been run on the file containing the electronic version of this Brief and no viruses have been detected.

Date:  September 8, 2025                     *Paige Macdonald-Matthes, Esquire*
                                             Paige Macdonald-Matthes, Esquire

## STATEMENT OF COUNSEL PURSUANT TO 3D Cir. L.A.R. 35.0

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the decisions of the United States Court of Appeals for the Third Circuit or the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, i.e. the panel's decision is contrary to the decision of the Supreme Court in *Van Buren v. United States*, 593 U.S. 374 (2021) and that this appeal involves a question of exceptional importance, *i.e.* clarification of the scope of the CFAA and the DTSA/PUTSA as it applies to the threat of unauthorized access and/or misappropriation by employees. *See Artway v. Atty. Gen. of New Jersey*, 83 F.3d 594, 597 (3d Cir. 1996) (Alito, J., dissenting from denial of rehearing).

*Paige Macdonald-Matthes, Esquire*
Paige Macdonald-Matthes, Esquire

## **CERTIFICATE OF SERVICE**

I Paige Macdonald-Matthes, certify that on September 8, 2025, I electronically filed the Petition for Rehearing of Appellant, NRA Group, LLC, with the Clerk of Court for the United Court of Appeals for the Third Circuit by using the CM/ECF filing system, which will send notification of the filing to all counsel of record.

*Paige Macdonald-Matthes, Esquire*
Paige Macdonald-Matthes, Esquire

# EXHIBIT A

**Pagination**

| | |
|---|---|
| * | Fed. Appx. |
| ** | BL |

Majority Opinion >

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

---

## LEXPATH TECHNOLOGIES HOLDINGS, INC., Appellant v. BRIAN WELCH; WELCH TECHNOLOGY SERVICES, LLC

---

No. 17-2604

April 17, 2018, Submitted under Third Circuit L.A.R. 34.1(a)

July 30, 2018, Opinion Filed

NOT PRECEDENTIAL OPINION UNDER THIRD CIRCUIT INTERNAL OPERATING PROCEDURE RULE 5.7. SUCH OPINIONS ARE NOT REGARDED AS PRECEDENTS WHICH BIND THE COURT.PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

On Appeal from the United States District Court for the District of New Jersey. (District Court No.: 3-13-cv-05379). District Judge: Honorable Peter G. Sheridan.

For Lexpath Technologies Holdings Inc, Plaintiff - Appellant: Victoria M. Brown, Esq., Englewood, NJ; Daniel F. Markham, Esq., Wrobel Markham, New York, NY.

For Brian Welch, Welch Technology Services Llc, Defendants - Appellees: Alexander J. Kemeny, Esq., Kemeny LLC, East Brunswick, NJ.

⊞ Lexpath Techs. Holdings, Inc.v. Welch, 744 Fed. Appx. 74 (3d Cir. 2018), Court Opinion

Before: GREENAWAY, JR., RENDELL, and FUENTES, Circuit Judges.

[*76] **OPINION**·

**RENDELL**, *Circuit Judge*:

Defendant-Appellee, Brian Welch, left his employment as a network engineer with Lexpath Holdings, Inc. ("Lexpath") to form his own company, Welch Technology Services, LLC ("WTS"). Lexpath sued Welch and WTS contending that, among other things, Welch misappropriated trade secrets and confidential information. The jury found for Welch and WTS on all counts. On appeal, Lexpath raises a plethora of issues, challenging several of the District Court's evidentiary rulings and denial of summary judgment in its favor, as well as the jury's verdict. For the following reasons, we will affirm.

## *I. BACKGROUND*

### A. Facts

Welch worked for Lexpath as a network engineer. He did not sign a non-compete or non-disclosure agreement with Lexpath. During his employment there, Welch serviced three primary clients: Liberty Transportation Group ("Liberty"), EIMC, LLC ("EIMC"), and Mental Health Association of New Jersey ("MHANJ").

Welch left Lexpath on August 2, 2013. However, before resigning, he took several steps to establish his new business, WTS. Welch officially formed WTS on June 21, 2013. On July 24, 2013, Welch spoke to his business contacts at Liberty, informing them of his intentions to leave Lexpath and form WTS. Liberty requested a rate sheet from Welch, which he provided on July 31, 2013. Moreover, on August 1, 2013, Welch spoke with his contact at EIMC about leaving Lexpath and forming WTS. However, all of Welch's other contact with EIMC was done after he left Lexpath. Finally, in his last week of employment with Lexpath, Welch informed an administrative assistant at MHANJ, Katie Koskie, of his intention to leave Lexpath. On August 2, 2013, Welch told one of Lexpath's principals, Martin Tuohy, that he was resigning and starting WTS. Welch told Tuohy that he solicited business from Liberty and EIMC, and he thought they would likely leave Lexpath for WTS. Within a few days of Welch's resignation, Liberty and EIMC moved their business to WTS.

After Welch's resignation on August 2, 2013, he kept his work laptop, which he had also used for personal use. Welch used the laptop after his resignation, [**2] but the parties dispute whether he had permission [*77] to do so. On August 6, 2013, Lexpath's counsel sent Welch a letter outlining the claims that Lexpath was considering bringing against Welch and WTS. Shortly thereafter, on August 13, 2013, Lexpath's counsel contacted Welch to inform him that Lexpath intended to initiate litigation, and to request the return of the laptop. Welch returned the laptop, through counsel, about seven months later.

For litigation support, Lexpath retained the services of Digital4NX to investigate whether there was misappropriation of trade secrets and other confidential information. On August 13, 2013, the same day that Lexpath told Welch it would sue, Welch ran a program called CCleaner on the laptop to permanently delete files. Upon examining the laptop, Digital4NX discovered that approximately 54,000 files had been deleted. However, the forensic expert testified that he could not determine what types of data had been deleted from

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

the laptop.

## B. Procedural History

On September 9, 2013, Lexpath filed suit against Welch and WTS. In its complaint, Lexpath stated the following nine claims: (1) violation of the Computer Fraud and Abuse Act ("CFAA) ( 18 U.S.C. § 1030); (2) breach of duty of loyalty; (3) misappropriation of trade secrets; (4) unfair competition; (5) breach of the duty of implied covenant of good faith and fair dealing; (6) tortious interference with prospective economic advantage; (7) disparagement; (8) violation of New Jersey Trade Secrets Act (N.J. Stat. Ann. §§ 56:15-1 to -9 (West 2012)); and (9) violation of the New Jersey Computer Related Offenses Act ("CROA") ( N.J. Stat. Ann. § 2A:38A-1 (West 2010)). Welch and WTS then counterclaimed seeking an award of damages for attorneys' fees and costs incurred in defending against the trade secrets claim, arguing it was made in bad faith.

Following the completion of discovery, Lexpath moved for summary judgment and spoliation sanctions in connection with Welch's handling of the laptop. In support of its motion, Lexpath submitted affidavits from Peter Reganato and Alan Feldman repeating statements made by Liberty's president, Donald Lusardi, that Welch had made negative remarks to him about Lexpath.₁ The District Court granted Welch's motion to exclude Reganato and Feldman's testimony as inadmissible double hearsay. The Court also entered an order ("Spoliation Order") granting Lexpath's motion for spoliation, holding that it would "instruct the jury that they *may* presume that the lost information was unfavorable to Defendants." A. 1724.11 (emphasis added).

Lexpath renewed its motion for summary judgment on the basis of "new facts adduced at the spoliation hearing." A. 2786. The District Court denied the motion, noting the overwhelming number of material facts at issue. Moreover, it noted that any factual determinations made in the Spoliation Order were solely for the purpose of spoliation sanctions and were not binding on the jury, nor did they take any issues away from the jury.

Before trial, Lexpath moved for the District Court to direct the jury to accept the findings of the Spoliation Order as conclusive. For their part, Welch and **[\*\*3]** WTS moved for the Court to exclude the testimony of Koskie, the MHANJ employee. The Court denied Lexpath's motion, stating that it chose the least severe sanction by crafting an instruction would tell the jury a "paragraph or two about spoliation" and instruct that the jury may consider the lost information unfavorable to Welch. A. 3353. However, the Court granted **[\*78]** Welch's motion, explaining that Koskie's testimony was irrelevant and would confuse the jury because Lexpath had not alleged any damages with regard to MHANJ.

At trial, during Lexpath's opening argument, counsel told the jury that "Mr. Welch destroyed evidence in the form of 53,000 computer files that were on a Lexpath laptop . . . . His Honor has already ruled on that and will instruct you that you may presume that the evidence he deleted would have been unfavorable to him." A. 3389. After opening arguments, the Court told the parties that it was "worried" that "the jury could have been left with the impression that the Court had made a decision on the facts" and that Lexpath's statement "gave the inference to the jury that . . . they should take this fact as being true." A. 3411-12.

The Court then issued a corrective instruction that:

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

While the Court issued an order on spoliation, I did not make any final decisions about the facts, I just said that the information could be admitted into evidence. So, it's your job during the course of this trial to determine the weight and credibility of that testimony that you'll hear, and those types of issues are within your province to decide. So whatever you heard, I made a decision on admission of evidence . . . .

A. 3420.

Later on at trial, Lexpath called its forensic expert to testify about the laptop, the deleted files, and the CCleaner program. Before closing arguments, the Court told counsel that it "had doubts as to whether or not a presumption was warranted" after hearing the evidence, and that it would charge spoliation but not a presumption in Lexpath's favor. A. 4078-79. After some discussion, Lexpath's counsel requested that the Court "take the spoliation charge out of the instructions," A. 4081, which the Court did.

The jury found in favor of Welch and WTS on all counts, and determined that Lexpath had asserted its misappropriation of trade secrets claim in bad faith. At no time did Lexpath move for judgment as a matter of law under Federal Rule of Civil Procedure 50. This appeal followed.

## II. DISCUSSION

On appeal, Lexpath assigns numerous errors to the District Court before and at trial. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 & 1367, and our jurisdiction flows from 28 U.S.C. § 1291. We review each of Lexpath's contentions in turn.

### A. Spoliation Instruction

We review the District Court's denial of an adverse inference instruction for abuse of discretion. *McMunn v. Babcock & Wilcox Power Gen. Grp., Inc.*, 869 F.3d 246, 268 (3d Cir. 2017). "[W]here there is evidence that one party has destroyed or altered evidence, the opposing party can obtain a '"spoliation inference," that the destroyed evidence would have been unfavorable to the position of the offending party.'" *Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)).

Lexpath contends that **[\*\*4]** the District Court abused its discretion by telling counsel it would not give a spoliation instruction, reversing its previous ruling that it would instruct the jury that "they may presume that the lost information [on Welch's laptop] was unfavorable to Defendants." A. 1724. After hearing the evidence, the Court told the parties that a presumption was not warranted, citing a lack of testimony as to whether Lexpath was actually missing any pricing documents **[\*79]** that could have been found on the laptop, and Lexpath's expert's testimony that the deleted files could have been for personal use. The Court told the parties that it would "charge[] spoliation, but I don't charge a presumption in favor of the plaintiff." A. 4079.₂ In response, Lexpath's counsel asked the Court to "take the spoliation charge out of the instructions." A. 4081.

We conclude that there was no abuse of discretion when the Court: repeatedly made clear to the parties before and at trial that "it was up to the jury to find whether spoliation in fact occurred," A. 4081, denied Lexpath's pretrial motion to direct the jury to accept as conclusive the facts in the Spoliation Order, and then—at Lexpath's request—declined to give a spoliation instruction.

Bloomberg Law®

To begin, a district court's findings of fact in deciding a pretrial motion cannot foreclose a jury from making its own factual findings. *Cf. Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552-53, 110 S. Ct. 1331, 108 L. Ed. 2d 504 (1990); *Berry v. United States*, 312 U.S. 450, 453, 61 S. Ct. 637, 85 L. Ed. 945 (1941) ("[Rule 50(b)] has not taken away from juries and given to judges any part of the exclusive power of juries to weigh evidence and determine contested issues of fact—a jury being the constitutional tribunal provided for trying facts in courts of law." (footnote omitted)).₃ The Spoliation Order merely stated that "the Court will instruct the jury that they may presume that the lost information was unfavorable to Defendants." A. 1724.11. This, the least-harsh form of spoliation instruction, would not have *required* the jury to presume the lost evidence was unfavorable. Nor did the Order state that the Court would instruct the jury that spoliation had, as a matter of law, occurred. Lexpath correctly notes that it did not assert, and therefore did not need to prove, a standalone tortious spoliation of evidence claim. But that did not absolve it of its burden to show the jury that Welch had control over the evidence and that he "intentionally or fraudulently lost or destroyed" it, *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96, 19 V.I. 642 (3d Cir. 1983), if it wanted to rely on spoliation to prove its substantive claims. Otherwise, as the Court had never indicated that it would instruct the jury that as a matter of law, spoliation had occurred, there would be no facts for the negative presumption to work on. Indeed, the Court repeatedly reminded the parties before trial that "the facts should be tried by the jury." A. 3354.

Nor could Lexpath have reasonably been surprised by the Court's ruling that it would not instruct the jury that Welch had deleted evidence, when the Court admonished Lexpath's counsel for telling the jury in its opening statement that "Mr. Welch destroyed evidence . . . His honor has already **[**5]** ruled on that." A. 3389. The Court immediately told the parties its concern that "the jury could have been left with the impression that the Court had made a decision on the facts," A. 3411, and issued a corrective instruction to the effect that the Spoliation Order did not remove the factual issue of spoliation from the jury. Additionally, it was within the **[*80]** Court's discretion to revisit its prior ruling upon hearing the evidence presented at trial. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) ("[A] trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." (quoting *Swietlowich v. Cty. of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979))).

We identify no abuse of discretion in declining, at the party's request, to give an instruction after so warning the parties about the jury's province to find facts regarding Welch's use of the laptop.

## B. Jury Verdict

Lexpath next argues that the jury's verdict should be vacated because it was against the weight of the evidence and because Welch's counsel "admitted liability" in closing. We need not address the merits of the sufficiency of the evidence claim because Lexpath failed to follow the proper procedure to challenge the sufficiency of the evidence. A party urging a new trial on appeal must make a post-verdict Rule 50 motion. *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 402-03, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006). Moreover, "[i]t is well settled that a party who does not file a Rule 50 motion for judgment as a matter of law at the end of the evidence is not thereafter entitled to have judgment entered in its favor notwithstanding an adverse verdict on the ground that there is insufficient evidence to support the verdict." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 364 (3d Cir. 1999). Lexpath's failure to make a Rule 50 motion precludes it from

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

➕ Lexpath Techs. Holdings, Inc.v. Welch, 744 Fed. Appx. 74 (3d Cir. 2018), Court Opinion

challenging the sufficiency of the evidence on appeal.

Alternatively, Lexpath contends that Welch's counsel admitted that Welch breached his duty of loyalty. At closing, his counsel stated that, by providing a rate sheet to Liberty two days before resigning from Lexpath, Welch did something "that he wasn't supposed to do." A. 4118. Standing alone, however, this concession does not mean that the jury was irrational in finding for Welch on the breach of duty of loyalty claim. *See Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 770 A.2d 1158, 1168 (N.J. 2001) (stating that when deciding a breach of duty of loyalty, the jury must consider "the employee's level of trust and confidence, the existence of an anti-competition contractual provision, and the egregiousness of the conduct").

## C. Statements of Reganato and Feldman

Lexpath also assigns error to the District Court's ruling excluding statements by Donald Lusardi to Peter Reganato and Allan Feldman as inadmissible "double hearsay." We review a district court's evidentiary decisions for abuse of discretion and its legal interpretation of the Federal Rules of Evidence *de novo. United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017). We generally review a district court's denial of a motion for reconsideration for abuse of discretion, **[**6]** but our review is plenary "if the court's denial was based upon the interpretation and application of a legal precept." *Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir. 1985). Breaking down the facts into their most basic form, we identify no abuse of discretion where the District Court denied admission of testimony from two individuals that a third, non-testifying individual told them that a fourth individual made disparaging remarks about the plaintiff.

Hearsay is an out-of-court statement offered for its truth. Fed. R. Evid. 801(c). At trial, Lexpath sought to introduce testimony from Reganato and Feldman that Lusardi **[*81]** told them that Welch made negative statements about Lexpath. His statements (repeated by Lusardi to Reganato and Feldman) were allegedly to the effect that Lexpath was incapable of handling the accounts following Welch's departure. The District Court determined this was double hearsay, which could only be admitted if each statement fit into a hearsay exception. Fed. R. Evid. 805. The Court concluded that there was no relevant exception for the second layer of hearsay (Lusardi's statements to Reganato and Feldman). The Court then denied Lexpath's motion to reconsider.

Even assuming, as Lexpath avers, that Welch's statements are not hearsay because they were not being offered to prove their truth (that Lexpath could not handle the accounts without Welch), but rather for the fact that Welch made the statements to Lusardi at all, that only takes care of the first level of hearsay. Lusardi's statements to Reganato and Feldman would still need to fit under a relevant exception to be admissible.

According to Lexpath, Lusardi's statements show his state of mind and motive when he decided to move Liberty's business—specifically, that he credited Welch's negative remarks about Lexpath and thought he had no choice but to go with Welch. *See* Lexpath Br. at 32-33 (citing Fed. R. Evid. 803(3)). But the conversations were not contemporaneous with the decision to move Liberty's business. Feldman said his conversation with Lusardi happened at least three months later, and Reganato's conversation occurred at least a week later. Admitting these statements would therefore have run afoul of the Rule 803 's prohibition on "including a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3). Likewise, Lexpath's contention that the statements should have been admitted under Rule 807(a) 's residual exception is

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

without merit because they lack the exceptional indicia of trustworthiness required.

## D. Summary Judgment

Our review of the District Court's denial of summary judgment is plenary, and we apply the same test as the District Court did. *Koshatka*, 762 F.2d at 333. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018).

Lexpath moved for summary judgment on its CFAA and CROA claims multiple times. The District Court denied the motions, but did not issue a memorandum in either instance. On appeal, Lexpath contends the District Court "erred in failing to recognize **[**7]** that the determinations made in the Spoliation Order constituted law of the case." Lexpath Br. at 36. Lexpath argues that summary judgment was appropriate because Welch violated both the CFAA and CROA when he knowingly ran CCleaner on the laptop after the end of his employment with Lexpath. For the following reasons, we disagree.

### 1. Summary Judgment on CFAA Claim

The District Court properly denied Lexpath's motion for summary judgment with respect to its CFAA claim. The CFAA permits civil recovery against a defendant who, *inter alia*, "[i]ntentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer, " 18 U.S.C. § 1030(a)(2), or who "knowingly causes the transmission of a program, information, code, or command, and as a result, intentionally causes damages without authorization to a protected computer," *id.* § 1030(a)(5)(A).

**[*82]** Lexpath argues that summary judgment was appropriate because Welch violated the CFAA when he knowingly ran CCleaner on the laptop after the end of his employment.[4] Lexpath relies on the facts established in the Spoliation Order to show that Welch was not authorized to use the laptop. However, as explained above, such findings do not require a court to usurp the jury's role as the trier of fact, and Lexpath has pointed us to no authority suggesting otherwise. Moreover, the District Court determined that whether Welch had permission to access and clean the laptop was ultimately an issue of fact for the jury. For instance, after Welch left Lexpath, Tuohy asked for his continued assistance regarding business matters, which arguably authorized Welch to use the laptop. Given that there are genuine disputes of material fact as to whether Welch's use was authorized, the District Court properly denied Lexpath's motion for summary judgment.

### 2. Summary Judgment on New Jersey Computer Related Offenses Act Claim

The District Court properly denied Lexpath's motion for summary judgment as to its claim under CROA. To recover under CROA, a plaintiff must show he was "damaged in business or property by the defendant's violation of the act." N.J. Stat. Ann. § 2A:38A-3. We have said that a plaintiff must demonstrate damages under CROA to sustain a claim. *In Re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). Expert fees paid in furtherance of litigation are considered litigation costs rather than damages. *See Kowaleski v. Allstate Ins. Co.*, 238 N.J. Super. 210, 569 A.2d 815, 819 n.4 (N.J. Super. Ct. App. Div. 1990).

Lexpath contends that summary judgment was appropriate because Welch violated CROA when he knowingly



© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

ran CCleaner on the laptop after the end of his employment. Lexpath bears the burden to demonstrate a violation. *See P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 509 (3d Cir. 2005). However, instead of showing that Welch copied or misappropriated confidential information, Lexpath asked the Court to adopt as final, for summary judgment purposes, its findings of fact in the Spoliation Order. Its state-law motion therefore suffers the same infirmity as its CFAA summary judgment motion, namely, that it asked **[**8]** the Court to rely on factual findings from the Spoliation Order and take that issue away from the jury. Moreover, Tuohy, in his deposition, stated that Welch gained his knowledge of confidential information through his employment at Lexpath, and so there was no need for Welch to take information from the laptop. Finally, Lexpath's expenses were incurred to support its litigation claims, which are considered litigation costs rather than damages, and are not compensable losses under CROA. *See Kowaleski*, 569 A.2d at 819 n.4. Accordingly, there is no basis to disturb the District Court's denial of summary judgment.

### E. Koskie Testimony

We review the District Court's evidentiary rulings for abuse of discretion. *McMunn*, 869 F.3d at 268. Before trial, the District Court granted Welch's motion *in limine* to exclude testimony from Katie **[*83]** Koskie of MHANJ, finding that it was irrelevant and would confuse the jury because MHANJ remained a client of Lexpath's. Lexpath sought to call Koskie to testify to "disparaging statements made by Welch regarding Lexpath and its employees." A. 2910-11.

On appeal, Lexpath contends the exclusion was in error because Koskie's testimony was relevant to whether Welch was dissatisfied with his job at Lexpath and whether he was beginning to compete with them. Perhaps. But, as the District Court recognized, it is more likely that the jury would have interpreted it as propensity evidence or been unduly confused by its content. This is especially so given that the testimony did not purport to offer relevant evidence of solicitation of MHANJ, let alone Liberty or EIMC. The Court appropriately exercised its discretion to exclude evidence, of limited relevance, on the basis that it was offered to establish a party's propensity to commit bad acts. *See* Fed. R. Evid. 404(a).5

### III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment and orders.

---

fn

\*

This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

fn

1

The District Court later denied Lexpath's motion for reconsideration of this ruling.

Lexpath Techs. Holdings, Inc.v. Welch, 744 Fed. Appx. 74 (3d Cir. 2018), Court Opinion

fn
2

Although the details of the proposed charge are not in the record, we presume the Court meant that it would tell the jury that it was up to them to determine whether or not spoliation had occurred.

fn
3

We have not yet spoken to the proper "division of fact-finding" labor, *Nucor Corp. v. Bell*, 251 F.R.D. 191, 202 (D.S.C. 2008), between judges and juries when issuing a spoliation sanction. We need not resolve this question on this appeal, however, because we conclude that it was not an abuse of discretion to decline to give an adverse inference charge under these circumstances.

fn
4

Lexpath also asserts that its expenditures to support litigation claims against Welch can qualify as "loss" under § 1030(e)(11). While we have not spoken to whether litigation costs are compensable losses under the statute, we need not reach that question here because there was ample basis for the District Court to deny Lexpath's motion for summary judgment based on the genuine disputes of fact regarding other provisions of the CFAA.

fn
5

Because we find no basis to remand, we need not address Lexpath's recusal argument.

© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service